### · Kent and wife *vs.* Harcourt and wife.

What is sufficient evidence of the loss of a deed to admit parol proof of its contents.

And what parol testimony of the contents of lost deeds is sufficient to entitle a plaintiff to recover upon them, in an action of ejectment.

The court will not disturb a verdict on the ground that the proof was insufficient when the nonsuit was moved for, in a case where the deficiency is afterwards supplied.

Declarations made by a grantor to the subscribing witness, at the time of the execution of a deed, and in the presence of the grantee, are admissible in evidence as part of the *res gestæ.*

And the contents, and loss, of the deed being established, a subsequent declaration, by the grantor, that the grantee had a deed for the premises are admissible as corroborative evidence of its execution and existence.

It seems there is no case establishing the doctrine that an adverse possession cannot be set up by a grantor, against his grantee without a valid intervening paper title. *Per* Scrugham, J.

If a grantor, not having at the time good title, conveys with warranty, and afterwards acquires a perfect title to the land conveyed, he will not be allowed to claim in opposition to his deed; but the title subsequently acquired will enure to the benefit of his grantee

But if the grantee enters under the conveyance, and the title he acquires from the grantor is good, so that he cannot be divested of it, except by his own act, misfortune or neglect, the doctrine of estoppel, upon which the rule is founded, will no more apply to prevent the grantor acquiring title by adverse possession commenced subsequent to his conveyance and surrender of possession, than it would to prevent his taking a conveyance from his grantee.

Neither is it more necessary in a grantor's case, than in that of any stranger · to the title, that the title under which his adverse possession commenced should be valid. It is sufficient if he clearly, unequivocally and notoriously claimed absolute title under it, to the exclusion of all right, title or interest in his grantee.

It is immaterial whether the claim upon which an adverse possession is founded is made upon a valid or a void instrument.

Nor is it necessary, except in cases of constructive occupancy, that the claim should be founded upon any written instrument whatever. Actual occupancy for twenty years, claiming title adversely to the plaintiff, will be sufficient to prevent his recovery.

THIS action was brought to recover the possession of two pieces of land in the town of Marlborough, Ulster county. The plaintiff, Mercy Kent, claimed title to the premises in

question as an heir at law of John Sands, who it is claimed had title under two deeds, alleged to have been given to said John by his father, Benjamin Sands, somewhere about 1814, (previous to which time the title was admitted by both parties to have been in Benjamin,) and also on the ground that John from that time till his death in 1850, held adverse possession of the premises. The defendants set up a conveyance of the premises by John to Benjamin in 1818, and a subsequent devise by Benjamin to the defendant Emma Harcourt of all his real estate. This conveyance was alleged by the plaintiffs to be invalid, on account of the insanity of John Sands at the time of the conveyance. The action was tried at the Ulster circuit, in February, 1856, before Justice GOULD and a jury. The plaintiffs proved the execution and delivery by Benjamin to John Sands of two deeds. The defendants proved a reconveyance in 1818 of one of the lots. The defendants gave no evidence of any conveyance by John Sands of the other lot. The plaintiffs gave evidence to prove that John Sands, at the date of the deed to Benjamin, was insane and continued so to the time of his death. The defendants called no testimony to establish his sanity, or controvert the plaintiffs' testimony. The case had been tried before, and some of the witnesses who had been then examined were dead. The testimony given by them on the former trial was admitted on this. David Sands, a witness for the plaintiff, testified that he was a brother of Mrs. Kent the plaintiff, and Mrs. Harcourt the defendant, and of John Sands. That John Sands died in February, 1850, unmarried, having been in possession of the premises from 1815 till that time. That after his death the witness searched among his papers for deeds, and took possession of his papers, but found no papers relating to the lots in question. David Selleck testified that about the year 1815 he witnessed two deeds executed by Benjamin Sands to John Sands, but did not read them; that he was told by the grantor they conveyed the lands in dispute. Joseph Sheffield testified that in 1813, as he thought,

John Sands, in the presence of Benjamin Sands, handed him some deeds to get recorded, mentioning what lands they were for, and wanted him to take them to the clerk's office ; that he took the deeds, but did not go to the clerk's office, and returned the deeds to John, the next day but one, after having first read them ; that the deeds were all written, and were signed by Benjamin Sands and wife ; that he could not be certain whether they were acknowledged or not, but he thought they were acknowledged before Judge Soper ; that he could not say that he read the deeds through ; but he read enough to find out what lots they were for ; that they conveyed the lots in controversy. Martha Sands testified that she was a daughter of Benjamin Sands, deceased, and sister of Mrs. Kent (the plaintiff) and Mrs. Harcourt (the defendant ;) that Benjamin Sands moved on the premises in dispute in 1820, and continued to live there till 1840 ; that he had the possession of both pieces of property during that time, and claimed to be the owner. The defendants gave in evidence a deed from John Sands to Benjamin Sands, dated March 28, 1818, and recorded in Ulster county clerk's office. The defendants claimed that it conveyed the ten acre lot described in the complaint. They also gave in evidence the last will and testament of Benjamin Sands, bearing date the 22d day of December, 1835, and duly proved as a will of real estate, before the surrogate of the county of Ulster. In and by this will the premises described in the complaint in this action were devised to the defendant Emma Harcourt. The defendants also introduced evidence to show an adverse possession of the premises by John Sands from the time of the conveyance thereof to him in 1813, or 1814, until the time of his death, in 1850. A motion for a nonsuit was made, at the close of the plaintiffs' testimony, and renewed at the close of the case, and denied in each instance.

The jury found a verdict for the plaintiffs, for the undivided seventh part of all the lands described in the complaint. The defendants made a case, containing the exceptions

taken on the trial, and an order was made that the same be heard in the first instance at a general term of the court.

*Gilbert Dean*, for the plaintiffs.

*E. A. Brewster*, for the defendants.

*By the Court,* Scrugham, J.   The evidence of the loss of the deeds from Benjamin Sands and his wife to John Sands was sufficient to admit parol proof of their contents ; and one of the principal questions we have to consider, is whether the parol testimony of their contents was sufficient to entitle the plaintiffs to recover upon them.   One of the subscribing witnesses to the deeds testified that at the time of their execution Benjamin Sands, the grantor, told him the deeds conveyed the premises which are the subject of this action, and Joseph Sheffield, a witness called by the plaintiffs, testifies that at about the time of their execution John Sands, in the presence and hearing of Benjamin Sands, the grantor, handed him two deeds to get recorded, mentioning the land which they conveyed ; and the witness took them with him to his house, and after retaining them a day or two returned them to John Sands, without having had them recorded ; that while he had the deeds in his possession he read them ; that they were from Benjamin Sands and wife to John Sands, were executed by the grantors, and were for the premises in question.   The fact that Benjamin Sands was the owner of the premises at the time these deeds are alleged to have been executed was not disputed, and it appears that a year or two after that time, when John Sands was erecting a house upon one of the parcels of land in question, Benjamin Sands told the person from whom John was purchasing lumber for that house, that John had the deed for that and two other lots, and was perfectly safe.   It also appeared that in the year 1818, Benjamin Sands offered to pay debts which John had incurred, provided John would

reconvey to him certain lands which had previously been conveyed by Benjamin to John, and that accordingly a deed, dated March 28, 1818, made by John Sands to Benjamin Sands, and purporting to convey all of the premises in question, was executed. It was upon this deed and the will of Benjamin Sands that the defendants claimed title. This evidence, taken together, was sufficient to enable the court to approximate to the date of these deeds and to determine their character, the parties to them and the premises conveyed by them. This was all that was essential. Some of the evidence above referred to was not adduced until after the first motion for a nonsuit had been made, and the defendants claim that the evidence was then insufficient, and therefore that the verdict should be set aside and a nonsuit ordered ; but the court will not disturb a verdict on the ground that the proof was insufficient when the nonsuit was moved for, in cases where the deficiency was afterwards supplied. (*Schenectady and Saratoga Plank Road Co.* v. *Thatcher,* 1 *Kern.* 102. *Hearsey* v. *Pruyn,* 7 *John.* 179. *Oakes* v. *Thornton,* 8 *Foster,* (*N. H.*) 44. *Colvin* v. *Burnet,* 2 *Hill,* 620. *Carson* v. *Allen,* 6 *Dana,* 395.) The declarations of the grantor were objected to by the defendants on the trial. Those which were made to the subscribing witness at the time of the execution of the deed, and in the presence of the grantee, were admissible as part of the *res gestœ ;* and the contents and loss of the deeds being established, the grantor's subsequent declaration that his grantee had deeds for the premises was properly received as corroborative evidence of their execution and existence. (*Metcalf* v. *Van Benthuysen,* 3 *Comst.* 424. *Jackson* v. *Vail,* 7 *Wend.* 125. *Corbin* v. *Jackson,* 14 *id.* 619. *Allen's Lessee* v. *Parish,* 3 *Ham. Rep.* 107, 111.) The learned judge before whom the action was tried charged that if the premises in question were conveyed by Benjamin Sands to John Sands, the possession of Benjamin Sands of the lands in question, after such conveyance, unless a valid reconveyance were shown, could not be adverse to John Sands, his grantee ;

that the grantor, as against his grantee without a valid intervening paper title, can never establish an adverse possession; and refused to charge as requested by the defendants, that if the jury were satisfied that the possession of the premises in question had been in Benjamin Sands from 1820 to his death in 1840, and since his death in the defendant Emma Harcourt, adversely to John Sands and the plaintiffs, then their verdict should be for the defendants, unless John Sands at the time of the commencement of such adverse possession and until within twenty years of the commencement of this action was insane; and the court decided that the propriety of so charging would depend entirely upon the validity of the deed of 1818. To these portions of the charge, and to this refusal and decision, the defendants duly excepted, and the exceptions were well taken. I do not find any case establishing the doctrine that an adverse possession cannot be established by a grantor, against his grantee, without a valid intervening paper title. In the case of *Jackson ex dem. Bowen* v. *Burton*, (1 *Wend.* 341,) it was said that the grantor having conveyed the premises by warranty deed, any title subsequently acquired by him would have enured to the benefit of the grantee, and that nothing but a clear, unequivocal and notorious disclaimer of the title of the grantee could render his possession, however long continued, adverse. In that case, the grantor continued in the possession of the premises for 27 years after the conveyance, and it did not appear that the grantee ever had the actual possession. As between the grantor and the grantee the delivery of the deed effected a constructive change of possession, and the grantor continuing in the occupancy of the premises held not as owner but as tenant to his grantee, and his possession not being adverse at its commencement could never become so.

In the case at bar, it does not appear that the deeds from Benjamin Sands to John Sands contained any covenant of warranty, and John Sands entered into possession of the premises upon the delivery of the deed to him, and Benja-

Kent *v.* Harcourt.

min Sands did not resume his possession until after a deed to him had been executed by John Sands. This deed was executed in 1818, and was duly recorded. Benjamin Sands occupied the premises from 1820 until 1840, when he died, and the defendant Emma Harcourt afterwards continued to occupy them as his devisee. From 1820 until his death in 1850, John Sands also lived upon the premises. Evidence was given of acts of ownership by Benjamin Sands and Emma Harcourt, during this period, from which and the other evidence in the case the jury could have determined whether there was a clear, unequivocal and notorious disclaimer by them of the title of John Sands; and if so, then under the ruling in *Jackson* v. *Burton* his possession would be deemed adverse. If a grantor, not having at the time good title, convey with warranty and afterwards acquire a perfect title to the land conveyed, he will not be allowed to claim in opposition to his deed, but the title subsequently acquired will enure to the benefit of his grantee. (*Bates* v. *Norcross*, 17 *Pick.* 14. *Jackson* v. *Bull*, 1 *John. Cas.* 81. *Jackson ex dem. McCrackin* v. *Wright*, 14 *John.* 193. *Jackson ex dem. Benson* v. *Matsdorf*, 11 *id.* 91. *Jackson ex dem. Stevens* v. *Stevens*, 16 *id.* 110.) But if the grantee enters under the conveyance, and the title he acquires from the grantor is good, so that he cannot be divested of it, except by his own act, misfortune or neglect, the doctrine of estoppel upon which the rule is founded will no more apply to prevent the grantor acquiring title by adverse possession commenced subsequent to his conveyance and surrender of possession, than it would to prevent his taking a conveyance from his grantee. (*Despard* v. *Walbridge*, 15 *N. Y. Rep.* 374.)

Neither was it more necessary in his case than in that of any stranger to the title that the conveyance under which his adverse possession commenced should be valid. It was sufficient if he " clearly, unequivocally and notoriously" claimed absolute title under it to the exclusion of all right, title or interest in John Sands. It is wholly immaterial

whether the claim upon which an adverse possession is founded is made upon a valid or a void instrument. Nor indeed is it necessary, except in cases of constructive occupancy, that the claim should be founded upon any written instrument whatever; actual occupancy for twenty years claiming title adversely to the plaintiffs would be sufficient to prevent their recovery. (*Harpending* v. *The Reformed Protestant Dutch Church*, 16 *Peters*, 455. *Humbert* v. *Trinity Church*, 24 *Wend.* 587. *Clapp* v. *Bromagham*, 9 *Cowen*, 530. *Bogardus* v. *Trinity Church*, 4 *Sandf. Ch.* 633.)

A new trial should be ordered, costs to abide the event.

[KINGS GENERAL TERM, December 10, 1860. *Lott, Brown* and *Scrugham*, Justices.]