Cramer v. Benton.

New trial granted.

---

GEORGE W. CRAMER *v.* JOHN W. BENTON.

(GENERAL TERM, FOURTH DEPARTMENT, JUNE, 1871.)

The grantor of land may claim to hold adversely against his grantee.

Equitable defences and counter claims to actions at law, are confined to the cases in which a court of equity, if its jurisdiction were invoked by action, would restrain or limit the suit at law, and grant equitable relief against it.

When a defendant sets up and seeks an adjudication in his favor upon an equitable defence, or counter-claim, he is *pro hac vice,* in a court of equity, and must rely upon its principles to maintain his claims.

THE plaintiff brought his action for recovery of the possession of land occupied by the defendant. The pleadings were a complaint in ordinary form and an answer, which set up adverse possession for more than twenty years, and a mutual mistake in the description, contained respectively in each of two certain deeds of partition interchanged in 1846, between the defendant and his brother, Lewis J. Benton, from the latter of whom, by intermediate conveyance, the plaintiff derived title, and claimed that by means of these mistakes, the premises described in the complaint had been omitted from

the deed, from Lewis J. Benton to the defendant, and included in his, the defendant's own, deed to Lewis.

It appeared that the defendant's occupation under his deed included the premises, described in the complaint, and which were alleged by him to have been omitted, by mistake, from his partition deed.

There was a verdict for the defendant at the Wayne Circuit, and plaintiff's bill of exceptions ordered to be heard at the General Term in the first instance.

*E. G. Lapham,* for the plaintiff.

*S. K. Williams,* for the defendant.

Present — Mullin, P. J., Johnson and Talcott, JJ.

By the Court — Talcott, J.  This is an action of ejectment.  The premises in question were quitclaimed by the defendant to Lewis J. Benton, in November, 1846.  Lewis J. conveyed to Austin R. Howland, in November, 1847; Howland conveyed to Abel T. Blackmar, in April, 1850, and Blackmar to the plaintiff in March, 1861.

Blackmar's deed contains the usual covenant for quiet enjoyment and of general warranty.  Whether the intermediate deeds contain such, or any covenants, does not appear.  The suit was commenced in July, 1869.  The deed of the defendant, Lewis J. Benton, was one of the deeds whereby a partition was effected between the defendant and Lewis J. of certain premises which had descended to them as tenants in common.

The defendant set up in his answer, and upon the trial, that by a mutual mistake of the parties to his conveyance, it was made by its language to embrace the premises in controversy, without the knowledge and against the intention of both parties.  That such mistake existed the evidence tended strongly to show.  And it also tended to show that the premises so included by mistake had been in the occupation

Cramer *v.* Benton.

of the defendant, under claim of title, ever since the execution of the conveyance, in which the mistake occurred; and had the case been put wholly upon the ground of practical location and adverse possession for a period of more than twenty years, a verdict sustaining such possession might have been satisfactory.

The alleged mistake would probably be sufficient color of title. The counsel for the plaintiff is in error in supposing that a grantor cannot hold adversely to his grantee. (*Jackson* v. *Stiles*, 1 Wend., 103.) The court at *nisi prius*, however, ruled that the defendant might recover, on the mere ground that there was a mistake in the deed; that it was not intended to embrace the premises in controversy; thus giving to the defendant the effect of a reformation of his deed in equity, on the ground that the facts referred to constituted an equitable defence.

Though the general exception to the charge might not have been sufficient to raise this question, yet we think the point was fairly and fully presented on the motion to exclude the evidence on the opening of the counsel for the defendant, and in the ruling thereon and the exception. Indeed, at that stage of the case the court distinctly declared that there was no defence of adverse possession, and the trial proceeded for the mere purpose of establishing what was called the equitable defence. There is difficulty, doubtless, in many instances, in harmonizing the principle of equitable defence to actions at law with our modes of trial and practice.

The inquiry, however, which first presses upon our attention in this case is, what constitutes an equitable defence? The Code provides that the defendant may set forth as many defences and counterclaims as he may have, whether they be such as have heretofore been denominated legal or equitable, or both. This seems to have been construed to embrace equitable causes of action, affecting the equitable right of the plaintiff to enforce his legal cause of action, and probably such was the intention of the provision referred to. In this enlarged sense, an equitable defence or counterclaim to a legal

cause of action can mean nothing less than such a state of facts and parties as would induce a court of equity, in the exercise of its general jurisdiction, to interfere and restrain the prosecution of the action at law.

Parol evidence is clearly inadmissible, both at law and in equity, for the mere purpose of contradicting or varying the legal effect of a deed. (*Stevens* v. *Cooper*, 1 Johns. Ch. R., 429.)

And it is only in cases where the deed, by fraud or accident, has a different effect from what was intended, that a court of equity interferes to give relief. To constitute a defence to an action of ejectment, on the ground that the language and legal effect of the deed differs essentially from the intent of the parties, a case must be presented which would induce a court of equity to interpose and reform the defective instrument.

Not that it is absolutely necessary, in such a case, that a judgment reforming the instrument should be pronounced, if the defendant is content to waive, or does not demand, such full relief. For the judgment that he recovers in the action is giving him the full effect, so far as the title to the premises in controversy is concerned, of a reformation of the deed. It is manifest, however, that the court, before rendering such a judgment, should have before it the same facts and parties as would enable it to pronounce a decree for reformation.

Now, in the case at bar, there was, so far as the case discloses, an insuperable objection to relief in equity against the legal effect of the deed in question. That deed was executed in November, 1846, more than twenty years before the commencement of this action, in which, for the first time, the defendant in any action or judicial proceeding presented his equitable claim to have his deed reformed and its legal effect varied. The right to demand relief in such a case is barred by statute, at the expiration of ten years from the time when the cause of action shall have accrued. There is no reason to suppose that the legislature intended, by permitting equitable defences and counterclaims to be set up in defence to actions

Cramer *v.* Benton.

at law, to abrogate the statute of limitations as to such cases.
The same policy which prohibits the commencement of an
action upon such a claim would seem to be equally applicable
to the use of it as a defence.

The plaintiff claims title under a deed with warranty from
Blackmar. It is essential to the security of the plaintiff that
Blackmar should be a party to this action, so as to be bound
by any judgment which is to limit and impair the operation
of his deed, and to declare that the plaintiff did not, by that
deed, acquire title to a portion of the land purporting to be
conveyed by it. A court of equity only gives relief in cases
where all the parties whose rights are to be affected, or who
have a direct interest in the question to be determined, are
before it; and, doubtless, in such a case as the present, a court
of equity would not attempt to make a decree altering the
legal effect of the original conveyance by the defendant,
except the other parties to that conveyance, as well as the
subsequent purchasers for value, who have conveyed with
warranty, were before it. Construing the expressions of the
Code, which allow equitable defences and counterclaims to
actions at law, in their most enlarged sense, we think they
must, at least, be confined to those cases in which a court of
equity, if its jurisdiction were invoked by action, would
restrain or limit the suit at law, and grant equitable relief
against it. If we go beyond this, we are setting up, not an
equitable defence, but some hybrid, which has no name, and is
no defence, either at law or in equity.

It is true that, in *Crary* v. *Goodman* (2 Kern., 266), a new
trial was ordered in a case where the defendant set up, and
offered to prove, a mistake in his deed, though his grantee
was not a party to the suit; but the question of proper parties
was not discussed or alluded to: The refusal to receive the
evidence had been placed upon the sole ground that no equi-
table defence was admissible in an action of ejectment; and
the prevailing opinion in the Court of Appeals expressly dis-
claims any attempt to decide whether defendant " did or did
not make out, by his offers, such an equitable defence, because,

if the offer was defective, under the distinct ruling of the court, no alteration of its terms or substance could have availed him."

And in a similar case (*Phillips* v. *Gorham*, 17 N. Y., 270), the Court of Appeals said, if there was any defect of parties, or if the defendant was entitled to any restitution, he should have presented his claim at the trial, and it would have been, as we must presume, properly disposed of.

In this case, the very delicate and carefully guarded jurisdiction of a court of equity to reform a deed seems to have been entirely committed for its exercise to the jury. But, whether such a disposition of it was proper does not directly arise, as we are of opinion that the defendant was not entitled in the case to the judgment of a court of equity in his favor; and we think that, when a defendant sets up and seeks an adjudication in his favor upon an equitable defence or counterclaim, he is, *pro hac vice*, in a court of equity, and must rely upon its principles to maintain his claims.

A new trial should be granted, with costs to abide the event.