### SIMIS *v.* McELROY.

*(Supreme Court, General Term, First Department.   June 12, 1891.)*

1. VENDOR AND VENDEE—MARKETABLE TITLE.

In 1777 testator devised a share of certain real estate to his granddaughter C. in fee, with remainder to testator's children in case she should die without issue.   C. sold her share of the estate to J. and S., and it was conveyed to them in a deed of partition between testator's devisees, in which C. united, subject to determination by C.'s death without issue.   J. and S. subsequently conveyed the same property, with a like limitation, to K., and through mesne conveyances it finally came to plaintiff after the death of C. in 1824, unmarried and without issue.   *Held,* that plaintiff had not such a marketable title as defendant, purchasing the premises from him, could be required to accept.

2. SAME—ADVERSE POSSESSION.

In such case, the fact that possession was taken in 1856 of a portion of the premises, by persons claiming under K. and her assigns, was insufficient to establish title in them by adverse possession, in the absence of proof of a continuous possession from that time forward.

3. SAME—MARKETABLE TITLE.

A vendee of real estate cannot be required to take a title from a vendor claiming under a conveyance defeated by the death of the grantor unmarried, and without issue, on the ground of adverse possession of the grantors for the statutory period, without showing in whom the outstanding interest in the estate had vested, since by possibility the statute may not have run against the persons entitled to such interest, the vendee having the right to be reasonably assured against bringing a lawsuit.

Appeal from circuit court, New York county.

Action by Mary O. Simis against Daniel S. McElroy.   From a judgment for plaintiff, defendant appeals.   For former report, see 14 N. Y. Supp. 241.

Argued before VAN BRUNT, P. J., and DANIELS, J.

*Daniel Daly,* for appellant.   *S. S. Harris,* for respondent.

VAN BRUNT, P. J.   This action was brought to recover damages for failure to comply with the contract by which the defendant agreed to purchase certain premises alleged to belong to the plaintiff.   The defense was that a marketable title was not tendered.   The title of the findings in the case would

seem to indicate that the action was tried in the supreme court. The learned justice, however, trying the case, states that it was tried at circuit without a jury; and the court thereupon caused an equitable judgment to be entered, which seems to have been entered by the clerk as a *postea.* This practice is entirely irregular. The only judgment which can be rendered at circuit in an action to recover damages is a money judgment, the circuit court having no equitable powers, except so far as they may be necessary for the trial of equitable defenses. A very brief statement of the history of this title seems to show that no proper title was tendered by the defendant. The following facts appeared upon the trial: (1) Jacobus Kip died in 1777, leaving a will dated 30th August, 1770, proved in mayor's court, 25th July, 1805, recorded 31st October, 1817, devising his residuary estate, including lot 29, shown on diagram attached, to his sons, Samuel and John, and his daughters, Catherine, Mary, and Margaret. By a codicil dated January 15, 1772, he recited the death of his daughter Catherine, and devised the share of his daughter Catherine to his granddaughter Catherine Teller, in fee, but, in case she should die without lawful issue of her body then living, then he devised the part of his real estate devised to her to and among his surviving children or their lawful representatives in fee, share and share alike. Samuel Kip and John Kip survived the testator. John Kip died 6th October, 1777, unmarried and without issue. Mary Kip died 6th October, 1780, unmarried and without issue. Samuel Kip died in February, 1804, leaving eight children, viz., James S. Kip, Elizabeth Kip, Elbert Kip, Samuel Kip, Cornelius Kip, Catherine Kip, Mary Kip, and Henry Kip. (2) A partition of said farm was made 9th November, 1804, by deed, which was recorded Liber 295, p. 497, on 17th April, 1833, all the children and heirs at law of said Samuel Kip being parties of the first part, Samuel Jones and Nicholas W. Stuyvesant being the parties of the second part, and Margaret Kip, daughter, and Catherine Teller, granddaughter, of said Jacobus Kip being parties of the third part. This deed recited that Margaret Kip and Catherine Teller, by deed dated 28th March, 1804, conveyed their entire interests in said farm to Samuel Jones and Nicholas W. Stuyvesant, as joint tenants, including all their estate, right, title, possession, claim, and demand, beneficial interest, and possibility of right or interest, whatsoever and howsoever, as well in law and in equity, of them, the said Margaret Kip and Catherine Teller. By this deed, tract No. 1, being 33 acres and upwards, and equal to two-fifths of the farm, was conveyed to the children of Samuel Kip, deceased, in fee; tract No. 2, containing 33 acres and upwards, equal to two-fifths, was conveyed to Jones and Stuyvesant, as joint tenants, being for the share conveyed to them by Margaret Kip; and parcels 3 and 4, equal to one-fifth, were conveyed to said Jones and Stuyvesant, as joint tenants, subject to be determined by the death of said Catherine Teller, without issue of her body then living, if she should happen to die without lawful issue of her body then living. (3) That Messrs. Jones and Stuyvesant executed and delivered to Catherine Kip, one of the children of said Samuel Kip, a deed dated 20th September, 1806, which was recorded 6th March, 1832, in New York register's office, in Liber 282 of Conveyances, p. 203. This deed recites that Jacobus Kip, being seised of the Kip's Bay farm by his will, gave and devised unto his daughter Catherine Teller, as a tenant in common, a part thereof; the death of Catherine Teller in her father's life-time leaving her daughter Catherine surviving. That by a codicil said Jacobus Kip devised the part of his estate devised by his will to his daughter Catherine to his granddaughter Catherine Teller in fee, but in case his said granddaughter should die without lawful issue of her body then living, then, and in such case, he devised the share devised to her to and among his surviving children, or their lawful representatives, in fee as tenants in common. That Catherine Teller, the granddaughter, on 28th March, 1804, granted and conveyed unto Jones and Stuyvesant, their heirs and assigns, all and singular her share in said

farm, being one equal undivided fifth part thereof, to hold as joint tenants, and not as tenants in common.    That partition had been made among the owners thereof, and a part of said premises, consisting of two lots at the southerly end of the farm, one of them adjoining the highway or land open thereto, and sometimes called lot No. 3 of the one-fifth, and the other lot No. 4, the said two parcels being one equal fifth part of the premises, was allotted and set apart to Jones and Stuyvesant, as their part and share of said premises, under and by virtue of said grant from said Catherine Teller to them, to hold as joint tenants, subject, however, to be determined by the death of the said Catherine Teller without lawful issue of her body then living, if she should happen to die without lawful issue of her body then living; and purported to convey, with other property, lot No. 29.    Catherine Teller, the granddaughter of Jacobus Kip, died in 1824, unmarried and without issue.    Catherine Kip married one John Y. Van Tuyl in the year 1807, and in March, 1835, conveyed certain premises, which it is claimed included the premises in question; and by divers mesne conveyances the same were conveyed to one Coman, in 1856, at the time when the property was first built upon, and when there is the first evidence of any possession.    Other evidence was introduced showing the history of the title, but there does not seem to have been evidence of any continuous possession, and it was shown that the premises were not inclosed or occupied other than by the building which stood thereon.    The court below held that "the objection that the title of Catherine Teller was liable to be determined by her dying without issue is obviated by the fact that all her title was conveyed to Jones and Stuyvesant, who made partition of this one-fifth among the heirs of Samuel Kip.    There being no other persons interested, the grant of the property, under the partition made of the 32 lots, vested the title in the heirs of Samuel Kip, the lot in question having been conveyed by Jones and Stuyvesant to Catherine Kip, through whom, by successive conveyances, it has come down to plaintiff.    It seems to us that the learned court, in this statement of the objection to the title arising from the death of Catherine Teller without issue, has overlooked the fact that, by the partition deed between the parties who were then interested in the estate, there was no attempt to convey to the grantees of Catherine Teller more than an estate during her life, in case she died without issue, and that then the estate descended under the will to the heirs of the testator, of which the children of Samuel Kip, the son of the testator, were certainly a portion; and there is no evidence of any conveyance or devise of any of them, except the deed from one, viz., Catherine Kip.    It is clear, under these circumstances, that the interest devised under the will of Jacobus Kip to Catherine Teller during her life, in case she died without issue, has not been conveyed by the persons to whom it descended.    Therefore, as far as the record title is concerned, there was a serious defect.    The claim that a title has been established by adverse possession seems to be absolutely without foundation.    It is true there is evidence that possession was taken of a portion of the lot in 1856.    But there is no proof of a continuous possession from that time forward.    Nor is there any proof of any possession of the premises, except such as is occupied by the house purporting to have been erected on the lot, there being no proof of the position of the fences inclosing the lot; and, since the possession established in 1856, there are lapses in the testimony, since from 1875 to 1880 no proof of possession was offered, but mere proof of ownership.    In any event, without such proof showing, during this period of 30 years, where the outstanding interest in the heirs of Kip was vested, it would certainly be dangerous for any person to take the title, as the statute of limitations might not have run; and a party, in taking a title to real estate, must necessarily be reasonably assured against the buying of a lawsuit.    Upon the whole case, we are of opinion that a good title was not offered, and that, therefore, the plaintiff should not recover.    The judgment should be reversed, and a new trial ordered, with costs to appellant to abide event.