WILLIAM SIMIS and Others, as Executors, etc., of MARY O. SIMIS, Deceased, Plaintiffs, *v.* DANIEL S. McELROY, Defendant.

*Marketable title — adverse possession — when a party claiming to have a good record title cannot compel acceptance of a title by adverse possession.*

Where a title depends upon adverse possession, such a possession must be clearly established.

In an action at law brought to recover damages for the failure of the defendant to perform an executory contract for the purchase from the plaintiff of certain real estate, it appeared that, at the time the deed thereof was tendered and refused, the vendor claimed a clear record title, and no other, to the property. On the trial of the action, his record title being clearly defective, he attempted to establish a title by adverse possession.

*Held,* that he should not be allowed to change his position, abandon the claim of having a record title, and insist that the vendee should accept a title by adverse possession.

A title open to reasonable doubt is not a marketable title, and the court cannot make it marketable by passing upon an objection depending upon a disputed question of fact or a doubtful question of law, in the absence of the party in whom the outstanding right is vested, as such party would not be bound by the adjudication and could raise the same question in a new proceeding.

MOTION by the defendant, Daniel S. McElroy, for a new trial upon a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the verdict of a jury in favor of the plaintiff rendered by direction of the court after a trial at the New York Circuit on the 20th day of November, 1895.

*J. H. K. Blauvelt,* for the plaintiff.

*Daniel Daly* for the defendant.

WILLIAMS, J.:

The action was originally brought by plaintiff's testator to recover damages for the failure by defendant to perform a contract for the purchase of real estate, 176 Lexington avenue, New York city. The testator has since died, and her executors have been brought in as parties plaintiff. The contract was made February 27, 1888, and was, in effect, that the plaintiff's testator would sell to defendant the premises in question for $14,000, and the defendant would pay the purchase price — $250 at the time of the execution of the contract; $3,750 April 23, 1888, and the balance of $10,000 in cash on the delivery of the deed, April 23, 1888, or at the option of defendant by giving a bond payable on or before April 23, 1890, with six per cent interest from April 23, 1888, secured by a mortgage upon the premises. The contract further provided that the testator, on receiving the purchase price, should execute and deliver to the defendant a proper deed containing general warranty, and the usual full covenants for the conveying and assuring to him of the fee simple of the premises, free from all incumbrance. The defendant paid the testator the $250 at the time of the execution of the contract, but has paid no part of the balance of the purchase money. The time for the completion of the contract was postponed, by agreement of the parties, until May 21, 1888. It was admitted on the trial that the parties both made tenders of performance of the contract at that time; that the defendant necessarily expended $200 in searching the title to the premises, and that the property, at the time the contract was to be completed, was worth the amount of the purchase price, $14,000.

There have been two trials of the case. On the first trial the court held that the title was good, and ordered judgment in favor of the plaintiff for nominal damages. That judgment was reversed and a new trial ordered by the General Term of the Supreme Court. (39 N. Y. St. Repr. 324.) The court then analyzed the chain of paper title (we need not again go over it here), and held in brief that the interest in the property devised under the will of Jacobus Kip to Catherine Teller, during her life, in case she died without issue (she having left no issue), had not been conveyed by the persons to whom it descended, and that, so far as the record title was concerned, therefore, there was a serious defect.

It was then claimed that a title by adverse possession from 1856

down was established, so as to cure this defect, but the court held there was a lapse in the testimony on this subject from 1875 to 1880, and that in any event, without some proof showing where, during this period of thirty years, the outstanding interest was vested, it would be very dangerous for any person to take the title, as the Statute of Limitations might not have run, and a party in taking a title to real estate must necessarily be reasonably assured against the buying of a law suit.

The plaintiffs, on the second trial, made no claim of a good merchantable record title, but claimed that there was a good merchantable title by adverse possession. The plaintiffs showed, and the court found (there being no request to go to the jury on the question), a continued possession of the property by themselves and their grantors from 1856 down, a period of about thirty-two years, but they did not show where the outstanding interest of the Kip heirs was vested during that time. It has been held that a promise to convey a good title is always implied in an executory contract for the sale of lands, and a purchaser is never bound to accept a defective title unless he expressly stipulates to take such title, knowing its defects; that a good title means not only a title valid in fact, but a marketable title, which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence, and that a purchaser will not generally be compelled to take a title where there is a defect in the record, which can be cured only by a resort to parol evidence. (*Irving* v. *Campbell*, 121 N. Y. 353.)

A title open to reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending upon a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication, and could raise the same question in a new proceeding. (*Fleming* v. *Burnham*, 100 N. Y. 10.) Such a doubt exists when there is uncertainty as to some fact appearing in the course of its deduction, which affects the value of the land and will interfere with its sale. (*Vought* v. *Williams*, 120 N. Y. 253.)

It is said that no danger is to be apprehended under the proofs on the second trial, by reason of the possibility that the Statute of Limitations has not run; that the persons holding the outstanding

title, whoever they may have been, must, in the absence of proof to the contrary, be presumed to have been sane and innocent of any crime, and that infancy could not have delayed the running of the statute beyond the period of thirty-one years, so that the title by adverse possession, as it was attempted to be shown at the trial, was made out and established beyond a reasonable doubt, and that was all that was necessary under the authorities hereinbefore referred to.

The claim made by the plaintiffs is that at the time agreed upon for the completion of the contract, May 21, 1888, their testator tendered to the defendant a deed conveying a good, merchantable title to the property, and it was refused, and they base their right to recover damages here upon the claim that the defendant then and there refused to perform the contract, which he was legally bound to perform. The question is whether the title then tendered was good and merchantable so that the defendant was bound to accept and pay for the property. The parties stand upon their strict legal rights, and the breach of the contract, which gives a right to recover damages, occurred, if at all, at the time of the tender and refusal. Evidence was given in the case as to what took place at the time the deed was tendered and refused by Mr. Daly, counsel for defendant, who testified that he objected to the title because there was no conveyance by the Kip heirs, and no evidence of conveyance to the center of the road or of adverse possession for a sufficiently long period; that Mr. Buckley (for plaintiffs' testatrix) contended that the record title was good and offered no proof of adverse possession; that on a previous occasion he, Mr. Daly, asked for proof as to adverse possession; that none was offered him, and he asked Mr. Buckley if he would have the testatrix swear to an affidavit if he, Mr. Daly, would draw one, and that he drew one which she swore to; that no other proof of adverse possession was offered him by Mr. Buckley, who claimed the record title was good, and that it was on that and *that only* he relied. It also appeared on cross-examination that he, Mr. Daly, prior to that time, had himself procured an affidavit of possession from Mr. Appleby, who was a witness on the trial. Neither of these two affidavits was given in evidence and their contents were not before the court. It does not appear what the testatrix knew about adverse possession or to what extent she testified to it in her affidavit.

The defendant asked to go to the jury on the question of what claim they made, at the time fixed for closing the title, and this request was denied with exception.

We must assume, therefore, as a matter of fact, that when the deed was tendered and refused the testatrix based her claim as to title to the property upon the record, and *that alone,* and that no claim was then made in her behalf that there was any title by adverse possession. The record title is now conceded to have been seriously defective, and no reliance is placed upon it. It seems to us that the plaintiffs' testatrix, having alleged and relied upon a good record title, and that alone, at the time of the tender and refusal, the plaintiffs should not have been heard to allege on the trial of this action at law that, although she had no good record title, still she had a title by adverse possession which was good and merchantable. They should not be permitted to change their position in this manner for the purpose of supporting this action to recover damages. But more than this, can it be said that the title by adverse possession was, at the time of the tender and refusal, free from reasonable doubt, or that such title then appeared to be uncontradicted so that the defendant was bound to receive and pay for the property upon the tender of the deed? The objection to the title was among other things put upon the ground that there was no sufficient proof of adverse possession, and the plaintiffs' testatrix was requested to furnish such proof. None was offered, however, at that time, and none was or had been brought to defendant's attention, except the two affidavits, the nature and extent of which do not appear. Plaintiffs' testatrix asserted a record title and defendant disputed it; no other title was claimed. The title alleged failed. The defendant was, under the circumstances, justified in refusing to take and pay for the property.

For the reasons here suggested, we think these exceptions by the defendant should be sustained, and the motion for a new trial granted, with costs to the appellant to abide event.

Van Brunt, P. J., and Patterson, J., concurred.

Ingraham, J. (concurring):

I concur in the conclusion arrived at by Mr. Justice Williams that the exceptions should be sustained and a new trial ordered. I

do not think that the evidence in this action was sufficient to show that the plaintiffs had a good marketable title to the premises by adverse possession. The evidence is that the plaintiffs' predecessor in title entered into possession when the house upon the lot was completed some time between March 28, 1856, and June 5, 1856. The contract for the sale of the property was made February 27, 1888, the title to be closed April 23, 1888. Assuming that the evidence would justify a finding that the plaintiffs' testator or her grantors had been in actual possession of the premises in question for thirty-two years, I do not think that proof of that fact alone is sufficient to make out a marketable title which a vendee is bound to take. The first record of plaintiffs' title is contained in the deed to Appleby, which is dated March 26, 1856, and the plaintiffs do not claim that they have any record title to the premises prior to that time. They proved a deed of the premises to Appleby from one who, upon the record, had no title to the premises, and was not, so far as appears, then in actual possession of the premises, with a series of conveyances from Appleby to the plaintiffs' testator and possession under such conveyance down to the time of the execution of the contract. Several of the parties who owned and occupied the property during this time are dead. There is no evidence as to the real owners of the property, whether or not they are residents of this State, under any disability, or whether any facts or circumstances exist which could prevent the running of the Statute of Limitations, or would create a good title in the plaintiffs by adverse possession. The burden is upon the plaintiffs to show that they had a marketable title to the premises at the time the contract was to be performed, and unless they sustain that burden they are not entitled to a judgment. The plaintiffs' testator showed no record title to the property, but simple possession for thirty-two years.

The real owners are not parties to the record, are not bound by any adjudication in this case, and would not be estopped in any way from asserting their ownership of the property in case they could show any fact which would prevent plaintiffs' adverse possession from ripening into a good title. I think that before the burden of proof can be said to have been sustained the plaintiffs were bound to show uncontradicted facts which would negative the existence of anything which could qualify the adverse possession necessary to

make the plaintiffs' title good as against the true owner; and as no fact was shown by which it would appear that some disability did not exist which would prevent this adverse possession from ripening into a good title, the plaintiffs were not entitled to a verdict.

It is now settled that in an action at law to recover damages for the breach of a contract to convey land, the same rule applies as in an action for specific performance in equity; that where there is a reasonable doubt as to the vendor's title, such as to affect the value of the property and to interfere with the sale of the land to a reasonable purchaser, the plaintiffs' cause of action must be sustained. (*Methodist Epis. Ch. Home* v. *Thompson*, 108 N. Y. 618.)

In *Shriver* v. *Shriver* (86 N. Y. 585) the court examined at length the question as to what constitutes a marketable title; and while it is conceded that "a clear adverse possession for that time (20 years) makes a title which a purchaser at a judicial sale may not refuse," the question remains, what is "a clear adverse possession?" And it is said, "Where the title depends upon a matter of fact such as is not capable of satisfactory proof, * * * a purchaser cannot be compelled to take it; or where the fact is capable of that proof, yet is not so proved. * * * In this class of cases are those where the title depends on presumption grounded merely on the lapse of time. It is said by a text writer that, as between vendor and purchaser, the court ought not to presume unless it believes on circumstances strong enough to induce belief that the fact is actually so."

This title that plaintiff tendered rests entirely on lapse of time. No fact was found to show that the possession had existed under such circumstances that it would ripen into a good title by adverse possession; either such facts were capable of satisfactory proof, in which case the plaintiff, the vendor, was bound to prove these, or, if he was not so capable, the purchaser should not be compelled to take.

In *Lowes* v. *Lush* (14 Ves. 547), in endeavoring to carry out the contract of sale, a deed was executed which operated as an act of bankruptcy. It was held that the purchaser would not be compelled to take a title which the court could not warrant him; that although many acts of bankruptcy have been committed without any consequences from them by which a purchaser could be affected until the time fixed by the act of Parliament had expired, it was

extremely difficult to give him any assurance that he had got an available title.

Upon the vendor rests the duty of inquiring (*Shriver* v. *Shriver*, *supra*), and he must establish the facts upon which his title rests, and having failed to give any evidence of material facts which are necessary to establish that there has been a " clear adverse possession " for twenty years, which had ripened into a good title by adverse possession, he failed to show that he had tendered a deed which would convey a merchantable title, and was not entitled to recover.

For these reasons I think the exceptions should be sustained and a new trial ordered, with costs to abide the event.

VAN BRUNT, P. J., and RUMSEY, J., concurred.

Exceptions sustained and motion for new trial granted, with costs to defendant to abide event.