LAZARD KAHN, Appellant, *v.* HENRY R. MOUNT, Respondent.

*Specific performance — what title by adverse possession is marketable — objections to a title — party wall covenant, when it does not run with the land.*

Where the vendee in a contract of sale refused to take title upon the ground that the interest of one of the heirs of a former owner of the property was still outstanding, and it appeared that the vendor and his predecessors in title had, since 1855, occupied the premises under written instruments, adversely to such outstanding interest, and that since 1833 the title had never been questioned, the court considered that the vendor had acquired by adverse possession a good and marketable title, which the vendee would be required to accept.

Right of a vendee, who brings an action alleging that a title tendered by the vendor was defective and unmarketable, to assert that he was released because the vendor failed to furnish him with proof of adverse possession at the time when the title was to be closed, considered.

A party-wall agreement entered into by the owners of adjacent lots, which specifically provides that it shall remain in force only "so long as the said parties or their legal representatives may continue to have title," creates a personal covenant, and not one running with the land.

APPEAL by the plaintiff, Lazard Kahn, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 13th day of April, 1899, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits, and directing a specific performance of a contract for the purchase of real estate.

*Abner C. Thomas,* for the appellant.

*William H. Stockwell,* for the respondent.

McLAUGHLIN, J.:

On the 1st day of April, 1898, the parties to this action entered into a contract, by which the defendant contracted to sell, and the plaintiff to purchase, certain real estate situated in the city of New York, for the purchase price of $22,250.

At the time of the execution of the contract, the plaintiff paid on account of the purchase price the sum of $1,000, and the balance he agreed to pay at a time specified for the passing of the title, and at that time he was ready, able and willing to perform, but he refused to accept the title tendered, on the ground that the same was defective and unmarketable. Subsequently he brought this action to

recover the $1,000 paid, and also the expenses alleged to have been incurred by him in searching the title. The defendant, by his answer, denied the material allegations of the complaint and alleged as an affirmative defense that the title was good and prayed for a judgment directing the plaintiff to specifically perform, by taking the title and paying the amount directed to be paid.

After a trial had of the issues involved, the complaint was dismissed by the learned justice sitting at Special Term, and judgment rendered for the defendant, as prayed for in the answer.

At the trial, the plaintiff sought to justify his refusal to take the title, upon the ground that there existed two alleged defects in it; (1) because Martines Hogenkamp "Became seized of the premises in question on or about January 9, 1829, and being so seized, he died on or about March 29, 1833, without having disposed of the same by will. He left him surviving John Hogenkamp, William Hogenkamp and Catharine Ramsen, his children and heirs at law, to whom said property descended in equal shares; that Catharine Ramsen, one of said children and heirs, has not conveyed her interest in said premises to this defendant, or to any of his predecessors in title, nor has the interest of said Catharine Ramsen been acquired by the defendant or his predecessors in title, and the said interest is still outstanding in said Catharine Remsen or her heirs or devisees." (2) Because " said premises are burdened and incumbered by an agreement recorded in the office of the register of the city and county of New York, in Liber 1138 of Conveyances, page 351."

The evidence introduced at the trial established that Martines Hogenkamp acquired the premises in question and a lot adjoining them on the westerly side, making in all a lot of fifty feet in width, by deed bearing date January 9, 1829; that on March 29, 1833, Martines Hogenkamp died; that he left a will dated April 6, 1824, which was, shortly after his death, admitted to probate, and by the terms of which his interest in the premises passed to his two sons William and John; that these two sons and one Katherine Remsen were his only children and heirs at law; that in February, 1835, William transferred, by a quitclaim deed, all his interest to his brother John; that John died in September, 1853, leaving a will, which was shortly after his death admitted to probate; and in and by which his interest passed to his son Daniel. Daniel held the title

until June, 1875, when he conveyed the two lots to Sophia Budden-
sick, and the title which she acquired had, at the time the contract
above referred to was executed, by mesne conveyance passed to and
at the trial of the action the same was held by the defendant. It
was thus clearly made to appear that for a period of upwards of
sixty years the defendant and his predecessors in interest had, under
written instruments, claimed to be the owners of the title to the
premises in dispute.

The plaintiff, however, urges that the title is not good because the
interest of Martines Hogenkamp did not pass under his will to his
two sons, William and John, for the reason that it was not acquired
by him until after the execution of the will, which was prior to the
enactment of the Revised Statutes; that a will executed prior to the
enactment of the Revised Statutes did not pass after-acquired title,
and, therefore, as to this real estate, Martines Hogenkamp died
intestate, and the title to it passed, not by the will, but by descent
to his three children, each taking an undivided one-third interest
therein; that the defendant had not acquired the interest of the
daughter, Mrs. Remsen, and, therefore, he did not have a good or
marketable title. To meet this claim the defendant, by testimony
which was uncontradicted, established that the premises ever since
1855 had been occupied adversely to any and all claims on the part
of Mrs. Remsen; that at the time of her father's death in 1833 she
was thirty-seven years of age; that she lived until January, 1879,
when she died intestate; that she had never been insane; that she
left her surviving her husband, John C. Remsen, who died in 1883,
two daughters, Sophia and Cornelia Eckerson, both of whom are
now living, and three grandchildren, daughters of a deceased
daughter; that all of said heirs at law of Mrs. Remsen were of full
age and sound mind, and had been so for more than twenty years
immediately prior to the commencement of the action; that the
title of the defendant and his predecessors in interest, from 1833 to
the commencement of the action, had not been disputed or ques-
tioned by any one.

Under such a state of facts we think the trial court was right in
holding that the defendant had a good and marketable title. Good
title had been acquired by adverse possession. There were no
infants or insane persons, who by conveyance or inheritance from

Mrs. Remsen, could have any interest which had not been extinguished by the lapse of time. Adverse possession and the Statute of Limitations would constitute a perfect defense against any claim which they might make. (*Simis* v. *McElroy*, 160 N. Y. 156.)

As to the other alleged defect, it appeared that on the 21st of April, 1870, an agreement was entered into between Bernard Passett and Gerry Passett on the one part and Daniel Hogenkamp on the other. This agreement recites that the parties were the owners of adjacent lots and that they proposed to erect thereon certain buildings; that for that purpose they had agreed that a party wall should be built, which should rest partly upon the lands of both parties and which wall, when completed, might be used by both of the parties and their legal representatives; that for that purpose they mutually covenanted that the wall should be built at their joint expense, " each party bearing a share in proportion to the amount of said wall used by them or him," or, if either of the parties should build the wall at his own expense, then the other party should, when completed, pay such sum or sums as should be found to be the cost value of one-half of such part as he shall select to use.

It was specifically provided that the agreement should continue and remain in force so long as the said parties or their legal representatives continued to have title to the land.

Obviously, the covenants contained in this agreement were personal ones. They did not run with and were not binding upon the land itself. (*Cole* v. *Hughes*, 54 N. Y. 444; *Scott* v. *McMillan*, 76 id. 141; *Mott* v. *Oppenheimer*, 135 id. 313.) A covenant is said to run with the land when either the liability to perform it, on the one hand, or the right to enforce it, on the other, passes to the assignees of the land. (8 Am. & Eng. Ency. of Law, 134.)

By the express terms of the agreement, the covenants, as we have seen, were to be binding only " so long as the said parties or their legal representatives may continue to have title." The parties and their legal representatives ceased to have any interest in the land in 1875.

The judgment is right and must be affirmed, with costs.

Van Brunt, P. J., Barrett, Rumsey and Ingraham, JJ., concurred.

Barrett, J.:

I concur in the opinion of Mr. Justice McLaughlin in this case. It may be well, however, to add a word as to a point which he has not discussed. The plaintiff claims that he was in substance released because of the defendant's failure to furnish him with proof of adverse possession at the time when the title was to be closed; and he cites *Simis* v. *McElroy* (12 App. Div. 434) in support of this contention. There are some observations in Justice Williams' opinion in that case to the effect that where the vendor claimed a clear record title when the deed was tendered, he should not upon the trial be permitted to abandon that claim and insist that the vendee should accept a title by adverse possession. The case, however, was decided upon a different ground, namely, that the evidence was insufficient to show a good marketable title by adverse possession. Our judgment was affirmed in the Court of Appeals solely upon that ground (160 N. Y. 156), and the point in question was not even referred to. If it had been deemed decisive, the question of adverse possession was quite unnecessarily discussed. We do not think, therefore, that the case is authority for the plaintiff's present contention. Then, too, the facts in the case at bar are somewhat different. The plaintiff here is the vendee. He alleges that the title tendered by the vendor was defective and unmarketable; and on that ground he sues to recover the amount paid upon account of his contract and the expenses incurred in searching the title. The defendant certainly has a right, in answer to such a claim, to show that it is unfounded; that his title is not defective and unmarketable; that, on the contrary, it is good and sufficient. This defense does not depend upon what he may have previously asserted upon the subject, but upon the actual fact.

And further, the defendant in his counterclaim sets up the facts upon which he claims a specific performance of the contract. Having proved these facts, he is entitled to the equitable relief prayed for. He has in truth abandoned no claim that he ever made upon the subject of his title. His claim throughout has simply been that he had a good title; and that claim he has fully established.

Van Brunt, P. J., Rumsey, Ingraham and McLaughlin, JJ., concurred.

Judgment affirmed, with costs.