KAHN v. MOUNT.

(Supreme Court, Appellate Division, First Department. December 8, 1899.)

1. VENDOR AND PURCHASER—REFUSAL TO PERFORM—DEFECTIVE TITLE—ADVERSE POSSESSION.

A purchaser of real estate cannot refuse to perform his contract on the ground that the title is defective, in that the interest of an heir of a former owner, who died intestate, is still outstanding, where the premises have been occupied for more than 20 years adversely to all claims of such heir or his heirs at law.

2. SAME—PARTY-WALL CONTRACT.

A purchaser of land cannot refuse to perform his contract because of an outstanding party-wall agreement, which was to be binding only so long as the parties thereto, or their legal representatives, continued to have title, and all such parties no longer have any interest in the land.

3. SAME.

Where a purchaser of real estate refused to perform his contract, and sued for money paid, on the ground that the title tendered was unmarketable, the vendor may show at the trial title by adverse possession, though he had not previously acquainted the purchaser with the facts constituting this adverse claim.

Appeal from special term, New York county.

Action by Lazard Kahn against Henry R. Mount to recover money paid on a contract for the purchase of real estate, and expenses incurred in searching the title. From a judgment dismissing the complaint, and directing a specific performance of the contract, as prayed in defendant's answer, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, BARRETT, RUMSEY, and INGRAHAM, JJ.

Abner C. Thomas, for appellant.
William H. Stockwell, for respondent.

McLAUGHLIN, J. On the 1st day of April, 1898, the parties to this action entered into a contract by which the defendant contracted to sell, and the plaintiff to purchase, certain real estate

situated in the city of New York, for the purchase price of $22,250. At the time of the execution of the contract the plaintiff paid on account of the purchase price the sum of $1,000, and the balance he agreed to pay at a time specified for the passing of the title; and at that time he was ready, able, and willing to perform, but he refused to accept the title tendered, on the ground that the same was defective and unmarketable. Subsequently he brought this action to recover the $1,000 paid, and also the expenses alleged to have been incurred by him in searching the title. The defendant, by his answer, denied the material allegations of the complaint, and alleged as an affirmative defense that the title was good, and prayed for a judgment directing the plaintiff to specifically perform, by taking the title and paying the amount directed to be paid. After a trial had of the issues involved, the complaint was dismissed by the learned justice sitting at special term, and judgment rendered for the defendant as prayed for in the answer.

At the trial the plaintiff sought to justify his refusal to take the title upon the ground that there existed two alleged defects in it: (1) Because Martines Hogenkamp "became seised of the premises in question about January 9, 1829, and, being so seised, he died on or about March 29, 1833, without having disposed of the same by will. He left, him surviving, John Hogenkamp, William Hogenkamp, and Katherine Remsen, his children and heirs at law, to whom said property descended in equal shares. That Katherine Remsen, one of said children and heirs at law, has not conveyed her interest in said premises to this defendant or to any of his predecessors in title, nor has the interest of said Katherine Remsen been acquired by the defendant or his predecessors in title, and the said interest is still outstanding in the said Katherine Remsen, or her heirs or devisees." (2) Because "the said premises are burdened and incumbered by an agreement recorded in the office of the register of the city and county of New York, in Liber 1,138 of Conveyances, p. 351."

The evidence introduced at the trial established that Martines Hogenkamp acquired the premises in question, and a lot adjoining it on the westerly side, making in all a lot of 50 feet in width, by deed bearing date January 29, 1829; that on March 9, 1833, Martines Hogenkamp died; that he left a will dated April 6, 1824, which was, shortly after his death, admitted to probate, and by the terms of which his interest in the premises passed to his two sons, William and John; that these two sons and one Katherine Remsen were his only children and heirs at law; that in February, 1835, William transferred, by a quitclaim deed, all his interest to his brother John; that John died in September, 1853, leaving a will, which was shortly after his death admitted to probate, and in and by which his interest passed to his son Daniel. Daniel held the title until June, 1875, when he conveyed the two lots to Sophia Buddensick, and the title which she acquired had, at the time the contract above referred to was executed, by mesne conveyance, passed to, and at the trial of the action the same was held by, the defendant. It was thus clearly made to appear that for a period

of upwards of 60 years the defendant and his predecessors in interest had, under written instruments, claimed to be the owners of the title to the premises in dispute. The plaintiff, however, urges that the title is not good, because the interest of Martines Hogenkamp did not pass, under his will, to his two sons, William and John, for the reason that it was not acquired by him until after the execution of the will, which was prior to the enactment of the Revised Statutes; that a will executed prior to the enactment of the Revised Statutes did not pass after-acquired title, and therefore, as to this real estate, Martines Hogenkamp died intestate, and the title to it passed, not by the will, but by descent, to his three children, each taking an undivided one-third interest therein; that the defendant had not acquired the interest of the daughter Mrs. Remsen, and therefore he did not have a good or marketable title. To meet this claim, the defendant, by testimony which was uncontradicted, established that the premises ever since 1855 had been occupied adversely to any and all claims on the part of Mrs. Remsen; that at the time of her father's death, in 1833, she was 37 years of age; that she lived until January, 1879, when she died intestate; that she had never been insane; that she left, her surviving, her husband, John C. Remsen, who died in 1883, two daughters, Sophia and Cornelia Eckerson, both of whom are now living, and three grandchildren, daughters of a deceased daughter; that all of said heirs at law of Mrs. Remsen were of full age and sound mind, and had been so for more than 20 years immediately prior to the commencement of the action; that the title of the defendant and his predecessors in interest, from 1833 to the commencement of the action, had not been disputed or questioned by any one.

Under such a state of facts, we think the trial court was right in holding that the defendant had a good and marketable title. Good title had been acquired by adverse possession. There were no infants or insane persons who by conveyance or inheritance from Mrs. Remsen could have any interest which had not been extinguished by the lapse of time. Adverse possession and the statute of limitations would constitute a perfect defense against any claim which they might make. Simis v. McElroy, 160 N. Y. 156, 54 N. E. 674.

As to the other alleged defect, it appeared that on the 21st of April, 1870, an agreement was entered into between Bernard Passett and Gerry Passett, on the one part, and Daniel Hogenkamp, on the other. This agreement recites that the parties were the owners of adjacent lots, and that they proposed to erect thereon certain buildings; that for that purpose they had agreed that a party wall should be built, which should rest partly upon the lands of both parties, and which wall, when completed, might be used by both of the parties and their legal representatives; that for that purpose they mutually covenanted that the wall should be built at their joint expense, "each party bearing a share in proportion to the amount of said wall used by them or him," or, if either of the parties should build the wall at his own expense, then the other party should, when completed, pay such sum or sums as should be

found to be the cost value of one-half of such part as he shall select to use. It was specifically provided that the agreement should continue and remain in force so long as the said parties or their legal representatives continued to have title to the land. Obviously, the covenants contained in this agreement were personal ones. They did not run with, and were not binding upon, the land itself. Cole v. Hughes, 54 N. Y. 444; Scott v. McMillan, 76 N. Y. 141; Mott v. Oppenheimer, 135 N. Y. 313, 31 N. E. 1097, 17 L. R. A. 409. A covenant is said to run with the land when either the liability to perform it, on the one hand, or the right to enforce it, on the other, passes to the assignees of the land. 8 Am. & Eng. Enc. Law, p. 134. By express terms of the agreement, the covenants, as we have seen, were to be binding only "so long as the said parties or their legal representatives may continue to have title." The parties and their legal representatives ceased to have any interest in the land in 1875.

The judgment is right, and must be affirmed, with costs. All concur.

BARRETT, J. I concur in the opinion of Mr. Justice McLAUGHLIN in this case. It may be well, however, to add a word as to a point which he has not discussed. The plaintiff claims that he was, in substance, released because of the defendant's failure to furnish him with proof of adverse possession at the time when the title was to be closed; and he cites Simis v. McElroy, 12 App. Div. 434, 42 N. Y. Supp. 290, in support of this contention. There are some observations in Justice Williams' opinion in that case to the effect that, where the vendor claimed a clear record title when the deed was tendered, he should not, upon the trial, be permitted to abandon that claim, and insist that the vendee should accept a title by adverse possession. The case, however, was decided upon a different ground, namely, that the evidence was insufficient to show a good marketable title by adverse possession. Our judgment was affirmed in the court of appeals solely upon that ground (160 N. Y. 156, 54 N. E. 674), and the point in question was not even referred to. If it had been deemed decisive, the question of adverse possession was quite unnecessarily discussed. We do not think, therefore, that the case is authority for the plaintiff's present contention. Then, too, the facts in the case at bar are somewhat different. The plaintiff here is the vendee. He alleges that the title tendered by the vendor was defective and unmarketable, and on that ground he sues to recover the amount paid upon account of his contract, and the expenses incurred in searching the title. The defendant certainly has a right, in answer to such a claim, to show that it is unfounded; that his title is not defective and unmarketable; that, on the contrary, it is good and sufficient. This defense does not depend upon what he may have previously asserted upon the subject, but upon the actual fact. And, further, the defendant in his counterclaim sets up the facts upon which he claims a specific performance of the contract. Having proved those facts, he is entitled to the equitable relief prayed for. He

has, in truth, abandoned no claim that he ever made upon the subject of his title. His claim throughout has simply been that he had a good title, and that claim he has fully established.