WENTWORTH et al. v. BRAUN et al.

(Supreme Court, Appellate Division, First Department. January 9, 1903.)

1. BOUNDARIES—ESTABLISHMENT.

Where the owners of adjoining city lots have for more than 20 years recognized a certain boundary line by the building and maintenance of a fence, and the subsequent building of a brick wall on the same line, any question as to the correct position of such line is precluded.

2. CORPORATIONS—DEED—AFFIRMANCE.

Where every stockholder of a corporation, except one holding two shares, expressly agreed to a conveyance of land by the corporation, and 80 per cent. of the stock voted for it, and the purchase price was distributed to the stockholders, and the trustees of the corporation then accounted to the stockholders and closed its affairs, the corporation had no right thereafter to disaffirm the deed.

Appeal from special term, New York county.

Action by Josiah W. Wentworth and others, as trustees, against Jennie Braun and others. Appeal by Ferdinand Sulzberger from an order compelling him to take title on a judicial sale. 78 N. Y. Supp. 233. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

D. P. Hays, for appellant.
C. B. Samuels and Moses Weinman, for respondents.

PATTERSON, J. Ferdinand Sulzberger was the purchaser at a foreclosure sale of certain premises in the city of New York, situate on the southwest corner of Bleecker and Mott streets, in the block bounded on the north by Bleecker street, on the east by Mott street, and on the west by Mulberry street. The premises were sold by a description which gives a frontage on Bleecker street of 80 feet, and 135 feet on Mott street. The southerly 22 feet 9¼ inches on Mott street are laid out on a map of the premises as an independent lot,

¶ 1. See Boundaries, vol. 8, Cent. Dig. §§ 235, 236, 240.

with a depth of 82 feet, and Sulzberger purchased the whole premises according to a description which gave 82 feet as the depth of such Mott street lot.  He refused to take title to the whole plot sold, on the ground that the Mott street lot measured in depth only 81 feet; that on the premises was erected a building, the rear wall of which encroached to the extent of 1 foot upon the lot adjoining the Mott street lot on the west; and that a good title to that 1 foot could not be acquired.  A motion was made at the special term to compel the purchaser to complete his purchase, which motion was granted, and from the order entered thereupon such purchaser now appeals.

The principal contention made is that no record title exists to this additional foot upon which the rear wall of the building fronting on Mott street stands.  The history of this property extends back to the year 1796, when it belonged to one Anthony Smith, who owned a plot running through from Mott street to Mulberry street.  All that plot was conveyed to Thomas H. Smith in 1815.  In various conveyances anterior to the mortgage foreclosed in this action, the Mott street lot is described as being in depth 81 feet from that street. The difficulty with its measurement seems to have arisen from conveyances made after 1828.  In the opinion of the court at special term, the situation of the lot at that time is accurately stated as follows:

"The land thus owned by Thomas H. Smith was laid out into lots, and conveyed by him with reference to a map or diagram which gave a depth of eighty-one feet to the lots on Mulberry street, and a similar depth to the lots on Mott street, which included the lot in question.  The Mulberry street lots were first conveyed, and were stated to be bounded by Smith's (the grantor's) land to the east; that is, by the rear line of this lot and of those adjoining.  But the depth of all, as I have stated, whether on Mott street or on Mulberry street, was eighty-one feet, according to the diagram. Smith next conveyed the Mott street land, including this lot, bounding it on the west by the Mulberry street lots, theretofore conveyed.  Evidently the assumption was that the block had a depth of no more than one hundred and sixty-two feet, but, as appears from its actual measurement, the center line of the block is distant eighty-one feet five and three-quarter inches from Mott street on the northerly line of this disputed lot, and eighty-two feet six and a half inches on its northerly line."

We think, from the conveyances that appear upon the record, it was clearly the intention that the lots fronting on each street should be measured to the center line of the street; but that being so, as is pointed out by the court below, the lot in question overreaches that line at some points to the extent of 6 inches.  We are not able to construe the various conveyances and instruments by which these lots were from time to time conveyed as attaching those 6 inches to the grant of the Mott street lot in question here; and so it may be said, so far as a record or paper title is concerned, that that much, at least, of the rear of the Mott street lot, is without the support of such a title.  But it is shown that an unassailable right to the Mott street lot to the full depth of 82 feet has been acquired by possession, and by the practical location by the owners of the property of the line of separation between the Mott street and the Mulberry street lot. No question can arise here of doubtful adverse possession, by reason of the possibility of infants or incompetent persons claiming as own-

ers of the Mulberry street lot. That property belongs to a corporation, and the line of division between the abutting lots was located more than 20 years ago. That was done by the placing of fences between the lots, the boundaries of which became thus established. From a survey made by Ford, a city surveyor, in 1881, the boundaries were shown then to have existed as they are now insisted upon by the respondent here. Mr. Ford swears that in 1881 there was a fence on the same line as the brick wall standing there in 1902. Mr. Meyers, who is connected with the Protestant Episcopal City Mission Society, which owns the Mulberry property, says that from 1878 to 1882 there was a wooden fence separating the two premises, and about 1882 a brick wall, built on the same line, separated them. Ettlinger says that since 1878 the lots were occupied and the buildings were erected upon precisely the same boundary line as now exists; and there is an affidavit of a builder who in 1885 was employed to repair or rebuild the wall of the building on the Mott street lot, in which it is stated that the wall was strengthened or rebuilt on the exact line of the wall there standing.

We think, under the adjudicated cases, this is sufficient to establish a practical location. In Reed v. Farr, 35 N. Y. 113, it was held that the practical location of a boundary line, and an acquiescence of the parties therein for a period of more than 20 years, is conclusive of the location of the boundary line, and that such location and acquiescence are deemed conclusive, on the ground that they constitute evidence of the correct location, of so high a nature as to admit of no contradiction. That was a case in which the line of separation between two lots was made by the erection of a fence, and there was proof that the owners and occupants of the land had respectively occupied it up to the fence, as far as the recognized boundary line, for over 20 years. In Baldwin v. Brown, 16 N. Y. 359, commented upon in Reed v. Farr, supra, it was held that practical location and long acquiescence in a boundary line are conclusive, because they are proof that the location is correct, and that proof is so controlling in its nature as to preclude evidence to the contrary. It is not proof of a parol agreement to establish a boundary line, but gives ground for a direct legal inference as to the true boundary line. The inference by acquiescence in the establishment of this boundary line is plainly to be drawn, for from the earlier conveyances of the property it is quite clear that the owners of the lots abutting in the rear must have considered their respective lots as extending to the center line of the block and that the fence was erected to mark the location of that center line. We are therefore of the opinion that the purchaser can acquire an unassailable right to this narrow strip at the westerly boundary of the Mott street lot.

The purchaser further objects to completing the purchase on the ground that certain persons named in the notice of rejection of title served by the purchaser, and who were trustees of the American Lithographic Company, were not made parties to the foreclosure suit, and that, proceedings for the dissolution of the American Lithographic Company, which was a New Jersey corporation, being had in that state, the directors, under the statute of New Jersey, were made trustees, and that the rights of creditors and stockholders of the corpora-

tion will not be cut off by reason of a defect of parties. The American Lithographic Company owned the premises foreclosed in this action. They were also mortgaged to one Louis Ettlinger, one of the directors, for $75,000, and the premises were subsequently conveyed to him. It appears that originally all the directors of the corporation were made parties to this action, but their names were stricken out. The point of the present objection seems to be that the stockholders of the American Lithographic Company may contest Ettlinger's right to the property. It is shown, however, by the respondents here, that all of the stockholders, except one holding two shares, agreed to dissolve the corporation, and that in the agreement of the stockholders it was stipulated that, upon a sale of the property of the company, the directors, or any of them, might bid upon or purchase any of the property for their own individual benefit, or for that of any one of them, without any restrictions, notwithstanding their trust as such directors, and freed from all the trusts in the agreement relating to the dissolution of the corporation, and might protect their own interests in the company with the same freedom as though they were strangers to the estate. After that agreement was made between the stockholders, Ettlinger made a proposition at a stockholders' meeting to purchase the property. His proposition was accepted, and the trustees were authorized to carry the transaction into effect. Those were the trustees who it is now urged ought to have been retained in the action as parties. It appears in addition that Ettlinger paid the purchase price; that it was distributed by the trustees; that an accounting was had with the stockholders, and the affairs of the corporation were all closed. As remarked by the court below:

"All stockholders took the benefit of the sale, and it is difficult to perceive any ground for the apprehension of an attack upon the regularity of the proceedings which have been unquestioned for any possible technicality during the six years which have intervened."

The order appealed from should be affirmed, with costs. All concur.