ABRAHAM WILDOVE, Appellant, *v.* JOSEPH C. PAPA and Others, Respondents.

Third Department, March 29, 1928.

**Vendor and purchaser — marketable title — title based upon adverse possession is marketable — contest relates to four-foot strip on one side of lot purchased — evidence shows both adverse possession of that strip for required length of time and practical location of boundary for more than thirty years — title of defendants was free from reasonable doubt.**

The plaintiff brings this action to recover a down payment made on a contract for the purchase of real property on the theory that the title offered by the defendants is not marketable.  The contention of the plaintiff is that the title to a four-foot strip on one side of the lot purchased is not in the defendants.

A title held by adverse possession or through the practical location of boundaries clearly established is a marketable title which the purchaser may be compelled to accept. The purchaser of course should have reasonable time in which to investigate the title before being put in default.

The evidence clearly establishes that while for many years the lot in question was conveyed by lot number, which according to a map on file did not include the four-foot strip, still it appears that for more than thirty years prior to 1913, when the description was corrected, a brick building on the premises occupied in part the four-foot strip in question and that the side of the building was placed on the boundary line including the four-foot strip and the fence in the rear of that building was also up to that line. Therefore, the proof established open, notorious and continuous occupancy for the required length of time and the title purchased by the plaintiff is free from any reasonable doubt.

HILL, J., dissents, with opinion.

APPEAL by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of Albany on the 20th day of June, 1925.

*Hun, Parker & Reilly* [*Michael D. Reilly* and *Herbert D. Hamm* of counsel], for the appellant.

*Alex. T. Selkirk,* for the respondents.

HINMAN, J. This is an appeal by the plaintiff from a judgment dismissing his complaint upon the merits in an action to foreclose a vendee's lien upon real property, that is, an action to recover a payment of $500 made on a land contract where the plaintiff as purchaser refused to take title on the ground that defendants did not offer him a marketable title. It was tried before the court without a jury. The court found that there was clear record title to the premises except as to a strip four feet wide running full depth of the premises on its westerly side and that as to this four-foot strip there was undoubted title by adverse possession and that the boundary line between the premises in question and the premises immediately adjoining on the west for upwards of fifty years had been fixed and established by the west wall of a brick building located on the premises, the west wall of a shed in the rear thereof and a fence connecting the two, and also by the fact that for upwards of fifty years there had existed immediately abutting said brick dwelling on the west two frame dwellings. It seems to have been decided many times that title by adverse possession or by practical location of boundaries clearly established, although by parol evidence, is a marketable title which the purchaser has been compelled to accept. (*Freedman* v. *Oppenheim,* 187 N. Y. 101; *Kahn* v. *Mount,* 46 App. Div. 84, 88; *Taub* v. *Spector,* 124 id. 158; *Ford* v. *Schlosser,* 13 Misc. 205; *Katz* v. *Käiser,* 154 N. Y. 294; *Wentworth* v. *Braun,* 78 App. Div. 634; *Ruff* v. *Gerhardt,* 73 id. 245; *Condon* v. *Quigley,* 209 id. 362; *Weil* v. *Radley,* 31 id. 25.)

In *Kahn* v. *Mount* (46 App. Div. 84, 88) the court considered the proposition whether the vendor was required to furnish the vendee with proof of adverse possession at the time when the title was to be closed. It was held to be sufficient to prove on the trial of an action to recover the part payment, that the vendor's title was good as an actual fact. It is undoubtedly just, and the Court of Appeals has held, that a purchaser should be given a reasonable time to investigate and should not be put in default, if he desires to investigate, until he has been given time to satisfy himself of the existence of the facts upon which adverse possession depends. (*Crocker Point Assn.* v. *Gouraud*, 224 N. Y. 343.) In the present case, however, it is not claimed that such an opportunity was denied and the question is not raised by appellant. The appellant relies upon failure to prove title by adverse possession free from reasonable doubt. He even assumes that in a case free from reasonable doubt a contract vendee will be required to take title depending on adverse possession or the practical location of boundaries.

So, it seems to me, the real question in the appeal is whether the defendants have proved a marketable title free from reasonable doubt.

The property in question is on the south side of Central avenue in Albany, between Robin and Perry streets. Perry street is now called North Lake avenue. In the early days of Albany all that property belonged to the old Dutch Church and was laid out in lots, each 33 feet wide and 160 feet deep. A map known as the old Dutch Church map is in existence and includes lots by number for this whole block on the south side of Central avenue, between Robin and Perry streets. These lots run through to Bradford street on the south and the lots facing Central avenue were really only the north half. So we are dealing with only the north half of lots 60 and 61 but for convenience I will speak of them as lot 60 and lot 61.

Patrick Downey was owner of lots 59, 60 and 61 in June, 1847, and he acquired lot 62 in 1853. Anne Downey was the owner of lots 59–62, inclusive, in 1854. In 1869 she conveyed lot 60 to Bridget McGraw. The defendants' two-story and basement brick house which, with the balance of the premises, is the subject of this litigation, is located on lot 60 and on the easterly four feet of lot 61 as laid out on the old Dutch Church map. It does not appear in the record just when this brick house was built, but an old city engineer's map of Central avenue made in 1863, shows an actual occupancy by the defendants' predecessor in title of thirty-six feet, ten inches, for the premises in question, which coincides

with the present occupancy within two inches. That map also shows an actual occupancy of the premises immediately west coinciding with present occupancy. This is of value in showing practical location as far back as 1863 (*Sherman* v. *Kane*, 86 N. Y. 57, 73), and if the houses now standing on the two lots were not then built, there must have been some open and notorious sign of occupancy because the deeds showed conveyance by lot numbers and each lot was only thirty-three feet wide. That actual, open and notorious occupancy of about thirty-seven feet has been proved to have existed as far back as 1871 by witness.Hughes who was a tenant of the premises in 1871 and 1872. The brick house was there then and there was a fence running to the rear of the lot which ran on the same line as the present fence from the end of the west wall of the building. The whole premises as now occupied were occupied then, with the exception that an addition has been built on the rear of the house, following the same westerly line, and a woodshed was later constructed in the rear of the lot, the west wall of which is on the same westerly line and the fence has been re-erected and shortened accordingly. The plaintiff has stipulated that the westerly four feet of occupancy are located on lot 61 as shown on the Dutch Church map and that the brick building has stood in its present location for forty years and that lot 60 as shown on the Dutch Church map is thirty-three feet wide. In 1880 the premises in question were sold in foreclosure to a man named LaRose. It was described by lot number as being thirty-three feet wide. It changed hands by conveyance a number of times thereafter but each time was so described until 1913 when it was described in a deed to one Gordon as being possessed and occupied to a width of thirty-seven feet. At that time (1913) it had been occupied as a lot thirty-seven feet wide since 1863 or 1871 and certainly for thirty years according to Anna M. Downey who had been born in the premises abutting on the east and except for fourteen years (between 1884 and 1898 probably) had continued to live there and still does. She is the granddaughter of Anne Downey, a former common owner, and says the premises in question were fenced in and occupied before that fourteen-year period just as they are occupied to-day and as far back as she can remember. She says the same thing as to the frame house abutting the brick house on the west. O'Hara, an old engineer and surveyor, who was connected with the city engineer's office from 1869 to 1900, said the occupancy of the premises in question and of the frame house immediately abutting on the west had been known to him as long as he could remember and had been unchanged. He said it was over forty years anyway that he had known this brick

building to be located there and the frame house up against it on the west and that it was one of the first on the street. So we have proof that the premises in question had been bounded by a building on each side for at least thirty years prior to 1913 to a width of thirty-seven feet and had been bought and sold a number of times, showing that it had always been marketable notwithstanding the recital of a widely different width of lot as described in the deeds as compared with the open and notorious width of actual occupancy. It had likewise in 1895 been shown on another paving map of that time as an actual occupancy of thirty-seven feet. The two paving maps were public records and officially prepared and presumptively correct and are some evidence of actual, open and notorious occupancy reaching back to 1863. (*Sherman* v. *Kane*, 86 N. Y. 57, 73.) It was not like a hidden discrepancy or one too insignificant to be readily observed, like a wall that might have encroached an inch or two, but it was a matter of four feet on a lot supposed to be only thirty-three feet wide according to the record title. Where such encroachment is so open and notorious and has continued for so long a time, it is presumed that it is being held adversely and, where a boundary is involved, that there has been a practical location. " A claim of title may be made by acts alone, quite as effectively as by the most emphatic assertions." (*Barnes* v. *Light*, 116 N. Y. 34, 39; *Belotti* v. *Bickhardt*, 228 id. 296.)

We have proof also of an act of ownership in the collection of rent as far back as 1871 in addition to the acts of ownership of improving and fencing in of the property and actually building a brick house upon it. We have proof of acts of ownership in the collection of rent from 1896 on. Mrs. Gick became a tenant then and remained such for seven years and always paid rent to defendants' predecessor in title without question. So did Turnbull from 1914 on. Myslow, record owner from 1909 to 1913, says nobody ever made any claim to her. Scuderi, who bought in 1920, says the same thing. Nobody ever questioned the defendants as to ownership until this controversy arose. There is nothing in the record to show that anybody ever did and the presumption is against it because it has been so freely bought and sold and the defendant Papa says there was a bank mortgage on it when he bought in 1921 and since then the National Savings Bank has taken another mortgage on it.

So there is clear proof of open and notorious occupancy adversely claimed for over thirty years prior to 1913; and ever since 1913, when the deed was corrected to conform to such adverse claim, there has been no adverse claim suggested and banks have loaned upon the strength of the title. Appellant suggests some recognition

of defect in title in 1913 by an effort made then to get a deed from the adjoining owners but the fact that defendants' predecessor in title actually inserted his claim in the deed is evidence to the contrary and the attempt on his part to purchase a possible outstanding title is no admission that the true title was in another. (*People* v. *Ladew*, 237 N. Y. 413, 424.) Any possible disability that may have developed in the ownership of the adjoining property through the death of the owner Fogarty in 1916 and who transferred his property by will, is unimportant, because adverse possession and practical location had been established so clearly before he died. Anne Downey conveyed the Fogarty property (adjoining on the west) in 1884 to Elizabeth Downey who in 1894 conveyed to Thomas Prior. He in turn transferred such premises in 1909 to Gotlob Schafer, who in 1912 conveyed to Fogarty. It is to be presumed from the fact of such conveyances that the respective owners of the premises on the west during that period were not under disability and the probate of Fogarty's will in 1916 tends to establish his competency. " A mere possibility that there are heirs or any person in existence who could make claim of title to the land is insufficient upon which to base an infirmity of title in the land sought to be conveyed. If reliance is placed upon such fact it devolves upon the defendant to show it by proof sufficient to raise a reasonable doubt." (*Ruff* v. *Gerhardt*, 73 App. Div. 245, 248.)

If we need any further proof that this is a clear case of adverse possession and practical location of boundaries it is in the weakness of the record title of the property on the west. It is important to note in this connection that in the successive deeds conveying that property there is a reference to not only lot 61 and the easterly four feet of lot 62 but there is a specific description by metes and bounds in which the starting point (the northwest corner of the property) is given at 194 feet east of Perry street, which is the cross street to the west on Central avenue. According to the old Dutch Church map, such starting point should have been two hundred and six feet and according to O'Hara, the surveyor, who measured the distance from the corner, the distance was two hundred and four feet, eight and one-quarter inches. Thus it is seen that the property to the west is described as including a strip four feet wide on the easterly side of lot 62 and there is a wide discrepancy between the starting point given in the successive deeds to that property and the actual location of it as shown by the old map and present measurement, which makes its record title very uncertain and tends to show the necessity for adopting a rule as to adverse possession and practical location of boundaries.

It is at least a strange coincidence that the property to the west should have included four feet of lot 62, such four feet being the exact amount of encroachment which defendants' property takes from lot 61.

I reach the conclusion that the situation is free from reasonable doubt and that the court below was right. The facts are undisputed and there is no doubtful question of law. On its facts this case is well supported by such cases as *Ruff* v. *Gerhardt* (73 App. Div. 245); *Weil* v. *Radley* (31 id. 25; affd., 163 N. Y. 582); *Belotti* v. *Bickhardt* (228 id. 296); *Kahn* v. *Mount* (46 App. Div. 84, 88); *Freedman* v. *Oppenheim* (187 N. Y. 101); *Granada* v. *D'Allesandro* (96 Misc. 468); *Lane* v. *Jacobs* (166 App. Div. 182); *Sherman* v. *Kane* (86 N. Y. 57); *Ford* v. *Schlosser* (13 Misc. 205); *Katz* v. *Kaiser* (154 N. Y. 294); *Wentworth* v. *Braun* (78 App. Div. 634).

The judgment should be affirmed, with costs.

VAN KIRK, P. J., DAVIS and WHITMYER, JJ., concur; HILL, J., dissents, with an opinion.

HILL, J. (dissenting). Defendant rests his entire case as to the westerly four feet on proof of occupation since 1863. The occupants held without color of title until 1913, when a grantor who had received a deed of thirty-three feet frontage purported to give a deed of thirty-seven feet. The devisees of Fogarty have refused to quitclaim their interest. Two of these devisees, being remaindermen, not in possession, are now under disability. So far as the evidence shows, there may have been disability as to all or part of the owners continuously since 1863. The defendants should negative this possibility. (*Woolley* v. *Newcombe*, 87 N. Y. 605.) A purchaser is not required to accept this title. (*Shriver* v. *Shriver*, 86 N. Y. 575; *Heller* v. *Cohen*, 154 id. 299; *Simis* v. *McElroy*, 160 id. 156; *Freedman* v. *Oppenheim*, 187 id. 101; *Crocker Point Assn.* v. *Gouraud*, 224 id. 343, 350.) At the time the deed was tendered evidence even of occupation had not been collected, and was not exhibited to plaintiff. Even if this proof was sufficient to require plaintiff to accept, the fact that it had not been collected and definitely disclosed to him would justify his refusal to complete the transaction. (*Trimboli* v. *Kinkel*, 226 N. Y. 147.)

I dissent, and vote for reversal.

Judgment affirmed, with costs.